# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1099

_____

Gary Mayer,

              Appellant,

    v.

Nextel West Corporation, a
Delaware corporation,

              Appellee.

\* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Minnesota.

_____

Submitted:  October 10, 2002

Filed:  February 6, 2003

_____

Before RILEY, RICHARD S. ARNOLD, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

Gary Mayer (Mayer) sued Nextel West Corporation (Nextel) for violating the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (2000), after Nextel terminated his employment. The district court[1] granted summary judgment to Nextel. Mayer appeals. Because the evidence does not create a reasonable inference that age was a determinative factor in Mayer's termination, we affirm.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

## I.    BACKGROUND

In January 1997, Robert Wahner (Wahner), Nextel's 58 year-old general manager, hired Mayer, who was 57.  Two months later, Nextel promoted Mayer to major account sales manager.  On March 18, 1997, Wahner gave Mayer his first performance evaluation, which included twelve assessment areas.[2]  An employee's rating for Level of Achievement in each area could be Development Required, Competent or Role Model.  Wahner rated Mayer Competent in all areas.

In July 1997, Phil Callahan (Callahan), age 34, replaced Wahner as general manager.  On January 15, 1998, Callahan gave Mayer his second performance evaluation.  Of the twelve areas, Callahan rated Mayer Competent in ten, but gave him a Development Required rating in Work Results and Selection.  Under Work Results, Callahan wrote Mayer's "[o]verall work results i.e. meeting quota and driving performance needs to improve.  Needs to take more of a hands on approach and demand excellence."  Under Selection, Callahan said, "Although [Mayer] has made timely hires, I would like to see Gary focus on the 'Right' person, not the task at hand – to fill headcount slots."  Callahan, in his deposition, testified his criteria for the "right" person "would be probably two to six years sales experience, somebody that can manage high activity, that has been in a high activity business, someone that is intelligent, articulate, has sales experience, can overcome objections."  Although Callahan rated Mayer Competent for Job Knowledge/Know-How, Callahan wrote he "would like to see Gary improve his product knowledge."  Under Decision Making, Callahan wrote "Gary makes timely decisions, however, I would like to see Gary collect additional data before making those decisions."

---

[2]The evaluation rated Mayer in the following twelve areas:  Work Habits; Customer Focus; Communication Skills; Teamwork; Job Knowledge/Know-How; Work Results; Diversity; Selection; Associate Development; Appraisal/Feedback; Work Environment; and Decision Making.

On January 27, 1999, Callahan gave Mayer his third annual performance evaluation. The evaluation now contained thirty-six review areas, instead of twelve, and, contained five, not three, Performance Levels: (1) Below Requirements; (2) Requires Improvement; (3) Meets Requirements; (4) Very Good; and (5) Exceeds Requirements. Mayer received an overall Meets Requirements rating. Specifically, Mayer received a Meets Requirements rating in thirty review areas, a Very Good rating in three areas, and a Requires Improvement in three areas. The three Requires Improvement areas were Initiative (Work Habits section), Listening (Communication Skills section) and Selection (Leadership section). Under Training and Development, Callahan instructed Mayer to improve his product knowledge. Under Activity Management, Callahan instructed Mayer to "Hold team accountable for their time and activities." Callahan also instructed Mayer to "Spend more time in the management role vs coaching role."

In August 1999, Callahan gave Mayer a mid-year evaluation, informing Mayer that "Quota is considered minimum performance." The evaluation also included a corrective action plan addressing two of the three areas in which Mayer received a Requires Improvement rating on his January 1999 performance evaluation.[3] Callahan told Mayer he had improved in the Work Habits/Initiative area, but had shown no improvement in the Listening area. Callahan wrote that Mayer "needed to continue to focus on activity management, performance improvement skills and holding [account executives] accountable to their forecast." Finally, Callahan told Mayer to "consistently exceed your quotas while learning the parts of the business, spend 3 1/2 days in service and repair."

---

[3]Even though the mid-year evaluation had a page entitled "Corrective Action Plan," Mayer claims there "is no such instrument that is called a Corrective Action Plan."

On September 30, 1999, Callahan fired Mayer, who was then 60 years old. Mayer claims he was never warned he was facing dismissal, and, after Callahan told him he was terminated, had "repeatedly asked Mr. Callahan to give me a reason for my termination but he refused to provide any." On October 11, 1999, Nextel wrote Mayer a letter informing him he had been terminated for "1) Poor Business Judgment, 2) Poor Business Knowledge and 3) Poor Sales Management Skills." Mayer claims Nextel had "a disciplinary instrument called a Personal Improvement Plan [PIP][4] for its employees whose performance is not acceptable." Mayer alleges two sales managers, ages 39 and 35, who also reported to Callahan, were placed on PIPs while he was not.

Mayer sued Nextel for age discrimination. Nextel moved for summary judgment, which the district court granted, holding the evidence does not create a reasonable inference that age was a determinative factor in Nextel's termination decision. Mayer appeals.

## II. DISCUSSION

The district court's grant of summary judgment to Nextel must be reviewed de novo. Keathley v. Ameritech Corp., 187 F.3d 915, 919 (8th Cir. 1999). Summary judgment for Nextel is proper if the evidence, viewed in the light most favorable to Mayer and giving Mayer the benefit of all reasonable inferences, shows there are no genuine issues of material fact and Nextel is entitled to judgment as a matter of law. See id.; Fed. R. Civ. P. 56(c). We remain mindful "that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." Keathley, 187 F.3d at 919.

---

[4]Mayer references a Personal Improvement Plan, while Nextel refers to it as a Performance Improvement Plan. Consistent with both references, we will refer to it simply as a PIP.

The ADEA prohibits an employer from terminating an employee because of the employee's age. 29 U.S.C. § 623(a)(1). Because Mayer presented no direct evidence of intentional age discrimination, but rather based his claim solely on circumstantial evidence, we apply the well-known <u>McDonnell Douglas</u> analytical framework. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973); <u>Calder v. TCI Cablevision of Mo., Inc.</u>, 298 F.3d 723, 728-29 (8th Cir. 2002). Under this three-part burden shifting framework, Mayer must establish a prima facie case of age discrimination by showing he (1) was at least 40 years old, (2) was terminated, (3) was meeting Nextel's reasonable expectations at the time of his termination, and (4) was replaced by someone substantially younger. <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Hopper v. Hallmark Cards, Inc.</u>, 87 F.3d 983, 988 (8th Cir. 1996). If Mayer succeeds, a rebuttable presumption of unlawful discrimination is created. <u>Kneibert v. Thomson Newspapers, Mich., Inc.</u>, 129 F.3d 444, 451-52 (8th Cir. 1997).

The district court determined Mayer had established a prima facie case of age discrimination. The only contested element below was whether Mayer was meeting Nextel's reasonable expectations at the time he was terminated. Nextel has abandoned this argument on appeal, and rightfully so. <u>See</u> <u>Keathley</u>, 187 F.3d at 920 ("The standard to be applied in assessing performance is not that of the ideal employee, but rather what the employer could legitimately expect."). Thus, we agree Mayer has established a prima facie case of age discrimination.

Nextel must then produce evidence of a legitimate, nondiscriminatory reason for terminating Mayer. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142 (2000) ("This burden is one of production, not persuasion; it 'can involve no credibility assessment.'") (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993)); <u>Kneibert</u>, 129 F.3d at 452. If Nextel meets its burden of production, the presumption disappears, and Mayer must show Nextel's reason for termination is a pretext for intentional age discrimination. <u>Kneibert</u>, 129 F.3d at 452. The district court determined Nextel met its production burden. We agree Nextel produced

numerous legitimate, nondiscriminatory reasons for terminating Mayer. In addition to the three reasons cited in its October 1999 letter (poor business judgment, poor business knowledge, poor sales management skills), Nextel offered other reasons for the termination, including Mayer's sales team did not meet its potential, Mayer did not take forecasting seriously, and Mayer had two problems with major customers in September 1999.

Because Nextel met its production burden, the presumption of discrimination disappears and Mayer "can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual *and* (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision." Rothmeier v. Inv. Advisors, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996) (emphasis added). The "sole remaining issue [is] discrimination *vel non*." Reeves, 530 U.S. at 143 (internal quotation omitted). Even though the burden of production shifted to Nextel at the second stage of the McDonnell Douglas framework, the ultimate burden of persuading the factfinder of intentional age discrimination rests with Mayer at all times. Id.; Rothmeier, 85 F.3d at 1332 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

Mayer argues summary judgment is inappropriate because he established a prima facie case and presented evidence that Nextel's proffered reasons for termination are pretextual. Although the district court recognized "Nextel's proffered reasons for terminating Mayer may be pretextual," the court nevertheless found "no reasonable factfinder could conclude that Mayer's termination was based on age discrimination."[5]

---

[5]As evidence of pretext, Mayer points out his sales team exceeded quota and he received favorable evaluations, proving he satisfied Nextel's expectations. He also contends age has not been excluded as a factor in Nextel's termination decision. Without so holding, we will assume Mayer has presented sufficient evidence to create a fact issue as to whether Nextel's reasons were pretextual.

The Supreme Court has made clear a "plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false," will not "*always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." Reeves, 530 U.S. at 148. "It is not enough, in other words, to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." Hicks, 509 U.S. at 519. "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves, 530 U.S. at 153.

Here, Mayer has established a prima facie case and, perhaps, even set forth sufficient evidence to reject Nextel's explanations for the termination.[6] Nevertheless, no rational factfinder could conclude Mayer's termination was discriminatory because no evidence creates a reasonable inference that age was the determinative factor for Mayer's termination.

In Rothmeier, we confronted the Hicks issue of "whether, in a case where the employee has established a prima facie case and has presented sufficient evidence for a jury to disbelieve the reasons proffered by the employer, the trial court nevertheless may decide as a matter of law that the evidence is insufficient for a reasonable jury to infer age discrimination and therefore may grant summary judgment to the employer." Rothmeier, 85 F.3d at 1335. Investment Advisors, Inc. (IAI) hired

---

[6]We do not believe Mayer's pretext evidence is particularly compelling, but do not need to reach directly the issue of whether an issue of material fact exists as to pretext. Suffice it to say, Mayer's evidence does not even remotely resemble the type of evidence the Supreme Court discussed in Hicks and Reeves when declaring a plaintiff may, in some cases, survive a summary judgment motion by establishing a prima facie case and presenting sufficient evidence of pretext.

Rothmeier when he was 43 years old and fired him three years later after he had reported a Securities and Exchange Commission (SEC) violation to IAI's chief executive officer (CEO). IAI said it terminated Rothmeier for his division's poor performance, his unit's failure to achieve goals, and his insubordination or differences in management styles between him and the CEO. Rothmeier showed he had never received an unfavorable performance review, had never been warned about insubordination or his management style, and had received a $50,000 bonus just two weeks before he was terminated. Rothmeier sued for age discrimination, and the district court granted summary judgment to IAI.

Although the district court determined Rothmeier had created factual disputes as to pretext, the court still granted summary judgment "because the record was bereft of any suggestion that there was any age based animus involved in the decision of IAI and [the CEO] to terminate Rothmeier." Id. at 1331. On appeal, we read Hicks as allowing "a trial judge to decide on a motion for summary judgment that the evidence is insufficient for a reasonable trier of fact to infer discrimination even though the plaintiff may have created a factual dispute as to the issue of pretext." Id. at 1335. We focused "on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of the plaintiff's age." Id. at 1337.

We decided the problems between Rothmeier and the CEO were based on a bad business relationship and not age. We highlighted the fact that Rothmeier was hired and fired by the same individual within three years. We also recognized the reason for Rothmeier's termination clearly appeared to be the SEC investigation and not age. Id. Finally, we believed Rothmeier attempted to create an age discrimination case "by weaving an intricate web." Id. Rothmeier argued IAI replaced him with a younger employee because Rothmeier was too ethical, while a younger employee would not stand up to any SEC cover-up. We rejected this argument because we had "no inclination to accept the assertion that the content of one's character is a proxy for

age." Id. at 1338. After a careful review of the record, we concluded "Rothmeier presented neither direct evidence of age discrimination nor sufficient circumstantial evidence for a reasonable factfinder to infer that Rothmeier's age '*actually motivated*' his employer's decision to discharge him." Id. at 1337 (citations omitted).

As in Rothmeier, we believe Mayer has also tried to create an age discrimination case "by weaving an intricate web." To find an inference of intentional age discrimination, Mayer asks us to focus on Callahan's order to hire the "right" people and subsequent explanation that the "right" people were those with two to six years experience. Mayer characterizes these comments as age references. We reject this creative argument. To decide otherwise would indict countless employers seeking to hire employees with two to six years experience as discriminating based on age. If Mayer had provided additional evidence of possible age-based animus, then a court could allow the jury to determine whether the "right" people comment was also based on age animus.

Mayer's argument also distorts the evidence. Callahan wrote the order to hire the "right" people in Mayer's performance evaluation nearly two years before Nextel terminated Mayer. Callahan never explained to Mayer, and Mayer never asked Callahan, if the order meant Mayer should hire only young people. Callahan's order to hire the "right" people should, in no way, create a reasonable inference of age discrimination. The "two to six years experience" comment Mayer references is taken from Callahan's deposition, but Mayer's quotation is incomplete. Callahan testified his criteria for the "right" person "would be probably two to six years sales experience, somebody that can manage high activity, that has been in a high activity business, someone that is intelligent, articulate, has sales experience, can overcome objections." This statement alone cannot create a reasonable inference Callahan meant for Mayer to hire only young people.

Mayer also asserts Callahan exhibited a pattern of discriminatory conduct toward individuals over age forty. First, Mayer claims Callahan only hires young people. After reading Mayer's briefs and reviewing the record, we are unable to find sufficient evidence to support this claim. Evidence, not contentions, avoids summary judgment. Second, Mayer claims Nextel placed two young sales managers on PIPs, but chose to terminate Mayer without placing him on a PIP. Nextel's uncontroverted explanation was only managers who failed to meet quota were placed on PIPs. Because Mayer had met quota, he was not eligible for a PIP. Nextel can certainly choose how to run its business, including not offering all at-will employees a PIP before termination, as long as it does not unlawfully discriminate in doing so. We refuse to sit as a super-personnel department who second-guesses Nextel's business decisions. See Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 837 (8th Cir. 2002).

Finally, Mayer argues he was not provided any notice he might be terminated before Nextel actually terminated him, pointing out his favorable performance ratings and that his team exceeded quota. A review of his performance evaluations, including his 1999 mid-year evaluation and corrective action plan, could be construed as notice that his performance was not exemplary. Meeting quota was considered minimal, not optimal, performance. During his tenure, Mayer's judgment, knowledge and management skills were consistently discussed in his evaluations. Notwithstanding, this case does not require us to resolve whether Mayer was entitled to actual notice before he was terminated. We are required to determine whether the evidence, including his lack of notice allegation, creates a reasonable inference that age was a determinative factor in Mayer's termination. We believe it does not.

Mayer cites numerous cases to support his contention that he presented sufficient evidence to infer Nextel terminated him based on his age. Those cases contain distinguishing facts, such as evidence of age-based animus that allowed inferences of intentional age discrimination, which are not present in this case. See,

e.g., Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 922 (8th Cir. 2000) ("We need not decide if Fisher's prima facie case and the potential falsity of Pharmacia's proffered explanation would alone support an inference of discrimination in this case, because Fisher has presented additional evidence supporting an inference of discrimination . . . consist[ing] primarily of disparaging age-related remarks . . . ."); Madel v. FCI Mktg., Inc., 116 F.3d 1247, 1252 (8th Cir. 1997) ("We are primarily concerned with the allegedly pervasive use of age-based epithets by [the hiring official]."); Ryther v. KARE 11, 108 F.3d 832, 844 (8th Cir. 1997) ("The plaintiff produced overwhelming evidence as to the elements of a prima facie case, and strong evidence of pretext, which, when considered with indications of age-based animus in [plaintiff's] work environment, clearly provide sufficient evidence as a matter of law to allow the trier of fact to find intentional discrimination.").

Mayer continually argues "nothing in the records excludes age discrimination as the real reason for Nextel's actions." This argument misses the mark. Before a court can allow a discrimination case involving only circumstantial evidence to go to a jury, it must find sufficient evidence that would allow a reasonable factfinder to infer that age was a determinative factor in the adverse employment action. Mayer must show something in the record that suggests age discrimination was a reason for Nextel's actions. Because he has failed to produce such evidence, summary judgment was proper.

## III.   CONCLUSION

Because Mayer failed to produce evidence allowing a reasonable inference that age was a determinative factor in Nextel's termination decision, we affirm the district court's entry of summary judgment in Nextel's favor.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.